**In re EVANS PRODUCTS COMPANY, Evans Financial Corp., HMC Funding Corp., Rand Acceptance Corporation, Evans Steel City, Inc., Grossmans, Inc., Lindsley, Inc., PIC Holding Company, Debtors.**

**Bankruptcy Nos. 85–00512–BKC–TCB to 85–00519–BKC–TCB.**

United States Bankruptcy Court, S.D. Florida.

July 2, 1986.

See also, D.C., 62 B.R. 579.

Robert A. Mark, Stearns Weaver Miller, Weissler, Alhadeff & Sitterson, P.A., Miami, Fla., for debtors.

Francis L. Carter, Steel, Hector & Davis, Miami, Fla., for Unsecured Creditors' Committees.

Herbert Stettin, Miami, Fla., Examiner.

Patrick A. Murphy, Murphy, Weir & Butler, San Francisco, Cal., for Bank of America NT & SA, as Agent and Collateral Agent.

Selinda Melnik, Milbank, Tweed, Hadley & McCloy, New York City, Patrick Barry, English, McCaughan & O'Bryan, Ft. Lauderdale, Fla., for the Committee of Non-Insider Equity Sec. Holders.

Randall H. Brook, Seattle, Wash., for the FTC.

John T. Lyons, Dist. Counsel, I.R.S., Miami, Fla., Steven Shapiro, Marika Lancaster, Attys., Tax Div., Dept. of Justice, Washington, D.C., for U.S.

Ezra Cohn/Mark Kaufman,. Troutman, Sanders, Lockerman & Ashmore, Atlanta, Ga., John Rogers Camp/Patrick Scott, Miami, Fla., for the Retail Group Creditors' Committee.

Stephen S. Young, Boston, Mass., for John C. Vaz.

Frederick Doppelt, New York City, individually and as trustee for the Goldberger Doll Mfg. Co., Inc. Profit Sharing Trust.

## MEMORANDUM
## DECISION—CONFIRMATION

THOMAS C. BRITTON, Chief Judge.

The chapter 11 cases filed by these eight related debtors have been jointly administered but not substantively consolidated. A confirmation hearing was held June 20 to consider competing reorganization plans submitted by the debtors and by certain creditors. The debtors' plan was rejected by every class of impaired creditors and was withdrawn at the hearing.

At the hearing, the creditors requested leave to modify their plan pursuant to B.R. 3019. I find that the proposed modifications do not adversely change the treatment of any creditor who has not approved the modifications. The request is granted.

By a separate Order Confirming Plan entered this day the creditors' modified joint plan of February 6 (C.P. No. 972) as further modified at confirmation (C.P. No. 1543) is confirmed. This memorandum decision supplements that Order.

### The Vote

The joint plan deals with 20 classes, seven of which are unimpaired by the plan and, therefore, are deemed to have accepted. No provision is made for intercompany claims (class 5) or for the preferred or common stockholders of Evans Products Company (classes 16 through 20). These six classes are deemed to have rejected the plan.

The remaining seven classes, although impaired under the terms of the plan, have accepted the plan by clear margins ranging from 66.6% to 100% in number and from 92% to 100% in amounts of claims.

The distribution of the competing plans, disclosure statements and ballots and the tabulation of the ballots has been entrusted, without objection, to an independent

data processing concern acting under the supervision of the clerk of this court. That company and the clerk have certified the election results. (C.P. Nos. 1574, 1575). No timely ballot representing a timely filed claim has been disregarded, even though the claim is disputed unless the claim was disallowed before confirmation after notice and hearing by this court.

### The Examiner's Recommendation

One month before the confirmation hearing, an examiner was appointed under 11 U.S.C. § 1104(b)(2) at the motion of the Federal Trade Commission, a major creditor. The appointment was requested and made for a specific purpose, to investigate the circumstances surrounding the transfer of certain assets (worth $215 million) from Evans Products to Grossman's seven months before bankruptcy. The transfer benefited bank lenders.

Herbert Stettin, a Miami attorney, was appointed and was asked to advise the court and the parties, if possible at confirmation, of the prospects for avoidance of that transfer and its recovery for the Evans Products creditors.

With the active cooperation of all affected interests, the examiner not only completed his investigation, he negotiated an offer of $4,716,300 from the lending banks to the Evans Products unsecured creditors. The lending banks, which are substantially unsecured, have waived their right to participate. This offer almost doubles the payment to these unsecured creditors, from 16% to 30% based upon the presently assumed creditor list. They will receive at least as much as they would get if the drop down were partially reversed and they will be spared the delay, hazard and expense of protracted litigation. The details of the examiner's investigation and the proposed settlement are fully covered in his report. (C.P. No. 1547).

The foregoing offer is implemented in the final modification of the creditors' joint plan. It has the support of the affected creditors' committees. Mr. Stettin's recommended settlement is approved without further hearing as permitted by § 102(1)(B)(ii) and B.R. 2002(a)(3). This court expresses its grateful appreciation for the examiner's extraordinary assistance, to the FTC for having brought this matter to our attention, and for the cooperation of the affected interests which has made this prompt resolution possible.

### Objections to Confirmation

There are eight filed objections to confirmation. Four of these (C.P. Nos. 1239, 1347, 1409, 1430) are from individuals. They raise no serious legal objection. Two others (C.P. Nos. 1387 and 1443) are from the IRS. The plan modification has satisfied these objections which have been withdrawn. The remaining two objections (C.P. Nos. 1440 and 1448) are from the debtors and the non-insider equity committee. All the other creditors' committees have either sponsored or endorsed the joint plan.

 The debtors and the non-insider equity committee together represent all the stockholders of the eight debtors (classes 16 through 20). The plan cancels the stock and offers nothing to the shareholders whose stock had a total value on the Exchange of $100 million before March 11, 1985, the day these cases were filed. These five classes are deemed to have rejected the plan. § 1126(g).

Notwithstanding that rejection, confirmation is required:

> if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted the plan. § 1129(b)(1).

This requires that where, as here, the plan crams down a class of interests by terminating the rights of the class, the plan not permit any senior class to receive more than full payment under the plan. If, as here, senior classes will receive securities under the plan, the court must value those securities as of the plan's effective date. *Collier on Bankruptcy* ¶ 1129.03[4](f) (15th Ed. 1985); *In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141, 152 (Bankr.S.D.N.Y.1984).

An issue critical to this confirmation, therefore, is the valuation of the Reorganized Grossman's common stock which will be given to classes 3, 4, 9, 10 and 15. This is the only objection at confirmation as to which any conflicting testimony was offered. I do not believe any other factual issue has been disputed by any affected party.

I accept the opinions of the independent expert witnesses Newman and Washkowitz, which have been supported by a third independent expert, Nichols. I find that the value of the equity of Reorganized Grossman's on the plan's effective date will be $112.5 million, as the mid-point in a range of $100 to $125 million. It follows from this finding that no class will receive more than full payment under the plan. The only conflicting evidence, the opinion of Brumberger, also an independent expert, is that the stock will be worth from $450 to $500 million. I find this valuation completely unpersuasive for the reasons brought out during his cross-examination.

Estimating the value of securities not yet issued based upon projected future earnings of a new entity is not a science. These so-called junk securities have not earned that name by accident. It is appropriate that they be valued with care and conservatively.

I find that the plan complies with § 1129(b). It does not discriminate unfairly against any class, including classes 16 through 20. It is fair and equitable with respect to each class, meeting the test specified in § 1129(b)(2)(B)(ii).

The debtors and the non-insider equity committee have specified a number of other objections to confirmation. The committee's post hearing memo identifies 16 respects in which it argues this plan is fatally defective. With the exception just discussed, none raises an issue of disputed fact. I have considered each carefully. I find them without merit. The plan proponents have anticipated and answered these contentions and no purpose would be served by further discussion of them here.

## Findings and Conclusions

Bankruptcy Rule 9014 grants this court discretion in a contested matter like this, as distinct from an adversary proceeding, to disregard B.R. 7052, which requires detailed findings of fact and separate conclusions of law in litigated adversary proceedings. I exercise that discretion here and disregard that requirement to the extent it would call for any factual findings or legal conclusions not already expressed here or in the accompanying Order Confirming Plan (which tracks bankruptcy Official Form No. 31.)

In doing so, I disappoint counsel who do not share this court's responsibility to decide without delay the other matters before it. For me it is an issue of survival.

## Notice of Hearing

It is almost inevitable when shareholders are wiped out in corporate reorganization, as is mandated here, that at least some of them will either deliberately or inadvertently obstruct or delay the reorganization in the hope that senior creditors (who lose by each day's delay) will be forced by the mere threat of delay to buy them off. The right of review is sacred to me, but unnecessary delay in the process of review is intolerable in any case. Only a court can prevent unnecessary delay. It must make every effort to do so.

Therefore, although I do not shorten the time for motions under B.R. 9023 or 9024, notice is given now that a hearing will be held on *Thursday, July 17, 1986, at 10:30 a.m. in Courtroom 1406, at 51 SW 1st Avenue, Miami, Florida* to consider any such motions pertaining to confirmation and any requested stay under B.R. 8005 pending appeal or in contemplation of appeal.