In re PINE MOUNTAIN, LTD., Debtor.

Bill and Patsy WOODS, Appellants,

v.

PINE MOUNTAIN, LTD., Appellee.

BAP No. CC 87-1278 JMoV.

Bankruptcy No. LA 85-08786 GM.

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued and Submitted on July 23, 1987.

Decided Oct. 14, 1987.

Joseph P. Quinby, Cooksey, Howard, Martin & Toole, Tustin, Cal., for appellants.

Robert Orgel, Pachulski, Stang & Ziehl, Los Angeles, Cal., for appellee.

Before JONES, MOOREMAN and VOLINN, Bankruptcy Judges.

## OPINION

JONES, Bankruptcy Judge:

### FACTS

The debtor, Pine Mountain, Ltd. ("PML"), filed a voluntary petition under Chapter 11 of the Bankruptcy Code on June 26, 1985. The debtor's principal asset is real property in Tuolomne County, California ("subject property").

The appellants, Bill and Patsy Woods ("Woods"), are prior owners of the subject property. They sold the property to Eugene and Jo Wagner ("Wagners") taking back a first deed of trust on the property securing a promissory note with a principal balance of approximately $244,000 ("Woods Note"). The Woods Note became due and payable by its terms on May 22, 1986. The Wagners subsequently, sold the property to the debtor, subject to the Woods Note and deed of trust, taking back a note ("Wagner Note") secured by a second deed of trust on the subject property.

Both the Woods Note and the Wagner Note state "ALL INCLUSIVE DEED OF TRUST securing this note contains a SUBORDINATION CLAUSE and a RELEASE CLAUSE". Both deeds of trust provide:

"BENEFICIARY agrees that if Trustor be not in default under the terms of this deed of trust or note secured hereby, Beneficiary shall subordinate this deed of trust to the lien of a deed of trust securing a construction loan from any institutional lender."

On or about November 12, 1986, PML filed a disclosure statement and a plan of reorganization. The disclosure statement was approved on February 2, 1987. The Woods and the Wagners objected to the plan and, after a hearing on February 24, 1987, PML amended the plan. After a hearing on March 9, 1987, the court confirmed PML's amended plan. The Woods, but not the Wagners, appealed.

### QUESTIONS PRESENTED

1. Whether the trial court erred by striking Mr. Wagner's testimony about his intent regarding the subordination clause.

2. Whether the trial court erred in confirming the amended PML plan.

### STANDARD OF REVIEW

Questions of fact will not be reversed on appeal unless found to be clearly erroneous. Bankr.Rule 8013. Questions of law, however, are reviewable de novo. *See In re American Mariner Ind., Inc.,* 734 F.2d 426, 429 (9th Cir.1984). Whether a reorganization plan is feasible is a question of fact, which is subject to the clearly erroneous standard. *See In re Pizza of Hawaii, Inc.,* 761 F.2d 1374, 1377 (9th Cir. 1985). Whether a plan provides a secured creditor with the indubitable equivalent of its claim is, in our view, a mixed question of law and fact. Although the facts underlying such a determination are reviewed under the clearly erroneous standard, the question of whether the legal standard has been satisfied is reviewed de novo. *See United States v. McConney,* 728 F.2d 1195, 1201–03 (9th Cir.1984) (en banc). An order approving a reorganization plan is reviewed for an abuse of discretion. *See Citibank, N.A. v. Baer,* 651 F.2d 1341 (10th Cir.1980); *In re Penn Central Transp. Co.,* 596 F.2d 1127 (3rd Cir.1979), *cert. denied,* 444 U.S. 834, 100 S.Ct. 67, 62 L.Ed.2d 44 (1980).

## DISCUSSION

### 1. Exclusion of Parol Evidence

The Woods first argue that the trial court erred by striking testimony by Mr. Wagner about his intent regarding the subordination clause. The Woods' attorney had elicited the testimony arguing that the subordination clause was ambiguous because it did not contain a limitation on the amount of the construction loan. The court struck the testimony on the ground that the subordination clause was not ambiguous and the testimony was therefore irrelevant.

■ We reject this argument for three reasons. First, the issue is not properly before the Panel. Bankruptcy Rule 8006 requires that the appellant, within ten days after filing the notice of appeal, serve on the appellee a statement of issues to be presented. The issue of the exclusion of the parol evidence was not included in the Woods' statement of issues and no amended statement was ever filed or served. Accordingly, the Woods have waived the issue of the exclusion of the Wagner testimony.

■ Second, assuming this issue is before us, the exclusion of the testimony was proper. Parol evidence is admissible only to explain a contractual term where the term is ambiguous. *See In re California Pump & Mfg. Co.*, 588 F.2d 717, 720 (9th Cir.1978). The Woods argue that the subordination clause is ambiguous because it does not contain a limit on the amount of the construction loan. We disagree. The subordination clause states that the Woods' lien will be subordinated to a subsequently obtained construction loan from an institutional lender. The absence of a specific limit for the construction loan does not make the subordination clause ambiguous.

■ Third, even if the trial court erred by striking Mr. Wagner's testimony, the error was harmless and reversal is unnecessary. *See Burgess v. Premier Corp.*, 727 F.2d 826, 836 (9th Cir.1984) (harmless error does not justify reversal). Mr. Wagner testified that he had neither a general nor a specific lien amount in mind for the subordination clause. "It was supposedly [sic] to be a lien for whatever the construction costs of the development would be. I had no idea what they would be." This testimony indicates that there was no agreement on a maximum amount for the construction loan. Therefore, Mr. Wagner's testimony could not clear up the alleged ambiguity about the amount.

### 2. Plan Confirmation

Because the Woods and the Wagners objected to the plan, PML sought confirmation under the cram down provisions of Bankruptcy Code section 1129(b). Section 1129(b) requires the plan to satisfy all the requirements of section 1129(a) except that an impaired class of creditors need not have accepted the plan. In addition, the plan must not discriminate unfairly and it must be fair and equitable with respect to the impaired creditor who objects to the plan. 11 U.S.C. section 1129(b)(1). In order to be fair and equitable with respect to a class of secured claims, the plan must satisfy one of three requirements:

(i)(I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

(II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

(ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or

(iii) for the realization by such holders of the indubitable equivalent of such claims.

11 U.S.C. section 1129(b)(2)(A).

The trial court concluded that the PML plan did not meet subsections (i) or (ii), but

174

that it satisfied subsection (iii) because it provided the Woods with the indubitable equivalent of their claim. On appeal, the Woods argue that the trial court erred in so concluding. PML argues that the plan not only provides the Woods with the indubitable equivalent of their claim, but that it also satisfies subsections (i) and (ii). We agree with the trial court regarding subsection (iii). As a result, we need not address whether the PML plan satisfies subsections (i) or (ii).

### a. The Plan's Provisions

The amended PML plan is comprehensive and includes detailed information about the proposed development of the subject property. The plan contemplates developing the property in three phases creating four separate parcels. Phase I is a development of parcel one, Phase II is a development of parcel two, and Phase III is a development of parcels three and four. As each phase is completed, the plan contemplates a sale or refinancing of each parcel before work on the next phase begins. As discussed below, the plan also requires PML to make payments to the Woods and the Wagners when each parcel is sold or refinanced.

The Woods' treatment under the amended PML plan may be summarized as follows: They receive a new promissory note that is due three years and three months from the date of approval by the county of a parcel map, not to exceed three years and ten months from the effective date of the plan. Interest on the original Woods Note that has accrued as of the effective date is added to the principal amount of the secured indebtedness. The entire indebtedness then accrues interest at the higher of 12% or 1.5% in excess of Bank of America's prime rate. The Woods' lien will be subordinated to a construction loan from an institutional lender when obtained. According to the plan, the projected cost for Phase I is $820,000. Upon the sale or refinancing of parcel one, PML must pay the Woods $268,800. Development of Phase II is projected to cost $663,000, and upon sale or refinancing of parcel two, PML must pay the Woods $100,900. These two payments would pay off the new Woods note. Fi-

nancing for Phase III of the development is projected at $2,870,000. When parcel three is sold or refinanced, PML must pay the Wagners $247,300. Finally, when parcel four is sold or refinanced, PML must pay $100,000 to the Wagners. According to the plan, these four payments would extinguish all obligations from PML to the Woods and to the Wagners. During development of the subject property by PML, interest on the existing debt would accrue, but payments would be made only as outlined above.

The amended plan provides several safeguards for the Woods. First, the note to be executed by PML in favor of the Woods has a term of 39 months from parcel approval but, in any event, payment in full is due *no later* than 46 months from the effective date of the plan. In addition, if the bankruptcy court finds that PML is six months or more behind schedule, PML is in default on the note. Moreover, under the amended plan, PML is required to obtain a completion bond for each phase of the development.

### b. Indubitable Equivalence

The Woods argue that the amended PML plan is wholly speculative and that by subordinating their secured claim, they lose their security while PML speculates with the property. They assert that this is in direct contravention of the meaning of the term "indubitable equivalence". The Woods rely on Judge Hand's opinion in *In re Murel Holding Corp.*, 75 F.2d 941 (2nd Cir.1935), to the effect that where a plan "is wholly speculative, based upon the expectations of those who have everything to gain and nothing to lose," *id.* at 942, the plan does not provide a secured creditor with the indubitable equivalent of its claim.

The record belies this argument. The trial court specifically found, after assessing the credibility of witnesses for both parties, that the amended PML plan was feasible. Thus, the plan is not "wholly speculative". In addition, because of the three-phase nature of the development, it is

unlikely that the Woods' claim would ever become even partially unsecured. Currently, the Woods' claim is for approximately $275,000. The property is valued at $1,200,000. Therefore, even after an $820,-000 construction loan is obtained, the Woods would still be fully secured. Moreover, once the construction loan is obtained and physical development of the property begins, it is likely that the value of the property will likely increase.

Finally, the record supports the court's determination that the plan is feasible. The plan provides the secured creditors with a variety of safeguards and a fair interest rate. The plan even capitalizes interest that has accrued as of the effective date of the plan.

Accordingly, we AFFIRM.