**In the Matter of Carl Louis ORLANDO and Josephine Marie Orlando, Debtors.**

**CENTRAL BANK OF KANSAS CITY, Movant,**

**v.**

**Carl Louis ORLANDO and Josephine Marie Orlando, Respondents.**

**Bankruptcy No. 84–01260–3–11.**

United States Bankruptcy Court, W.D. Missouri, W.D.

Aug. 19, 1985.

Robert Pummill, Kansas City, Mo., for movant.

Mark E. Fitzsimmons and David F. Williams, Springfield, Mo., for debtors/respondents.

ORDER DENYING RESPONDENTS' MOTION FOR RECONSIDERATION OF FORMER ORDER DENYING CONFIRMATION OF PLAN AND DIRECTING RESPONDENTS TO SHOW CAUSE IN WRITING, BY MEANS OF OFFERS OF ADEQUATE PROTECTION OF SECURED CREDITOR, WHY THEIR MOTIONS FOR STAY PENDING APPEAL SHOULD NOT BE DENIED

DENNIS J. STEWART, Bankruptcy Judge.

On July 16, 1985, this court issued its order granting the Central Bank of Kansas City relief from the automatic stay after the debtors had been granted some 165 days in which to sell certain of their real property in accordance with their proposals. Later, on July 24, 1985, this court issued its order converting the within chapter 11 reorganization proceedings to straight liquidation proceedings under chapter 7 of the Bankruptcy Code. The debtors have appealed from both orders. They have requested a stay of both orders pending the resolution of the appeals in the district court.

The files and records in these chapter 7 proceedings show that they were originally filed as chapter 11 proceedings on April 19, 1984, some 16 months ago; that the debtors have not succeeded in having a plan confirmed in that period of time; and that no creditor has been paid any money in that period of time. Further, the plan proposed by the debtors is to have indefinite additional time in which to sell certain real property and, in the meantime, grant no adequate protection payments to any of the creditors.

■ Chief among the errors now assigned to the court is the failure of the court to rule on the motion of the debtors filed March 15, 1985, to set aside the order of March 7, 1985, denying confirmation of the debtors' proposed plan of reorganization. It was the belief of the court, in granting the debtors additional time in which to sell the property, that it was in fact granting a type of reconsideration of the order denying confirmation insofar as it was granting the debtors an opportunity to accord adequate protection in what this court believed to be a liberal span of time. But it seems to be the contention of the debtors that this court should confirm a proposed amended plan which would grant them yet additional time in which to sell the property—a time period which the court presumes would pass without the according of any adequate protection payments by the debtors. This cannot be permitted under the decisional authority by which this court is bound. Under that authority, a secured creditor "is entitled to compensation for the delay in enforcing its rights during the interim between the petition and confirmation of the plan." *In re American Mariner Industries, Inc.*, 734 F.2d 426, 435 (9th Cir.1984). Some adequate protection payments may have to be made even when there is otherwise an equity cushion. See, e.g., *In re Monnier Bros.*, 755 F.2d 1336, 1340 (8th Cir.1985). These principles appear particularly to apply in the case at bar, in which the property may be depreciating and in which the interest accumulating to senior lienholders rapidly prejudices the rights of the junior lienholders. Even if a plan were confirmed, the secured creditors would be entitled to protection against such depreciation of their collateral rights. "Congress intended the concept of adequate protection (for) ... protecting the secured claim holder from a diminution in

the value of the collateral securing the debt." *In re Pine Lake Village Apartment Co.,* 19 B.R. 819, 824 (Bkrtcy.S.D.N.Y.1982). It is true that pre-confirmation adequate protection is of premier importance, for the value of the claim will be determined as of the effective date of the plan. And, after that date, "(t)he Bankruptcy Courts have almost uniformly ruled that the proper method of providing ... creditors with the equivalent of the value of their claim as of the effective date of the plan is to charge interest on the claim throughout the payment period." *Matter of Southern States Motor Inns, Inc.,* 709 F.2d 647, 650 (11th Cir.1983). But, as this court understands the proposals of the debtors, they entail only that payment will be made at a date in the future, which is uncertain, and that no payments of interest, either as adequate protection or as interest payments under a confirmed plan, will be made. Accordingly, this court feels that it has no other alternative than to deny the motion filed by the debtors to set aside the order of March 7, 1985, denying confirmation of the debtors' proposed plan of reorganization.

■ The same exigencies respecting the rights of the secured creditors seem also, without more, to require this court to deny the motions for stay pending appeal, unless some sort of adequate protection can be conferred upon the creditors in the meantime. It is therefore, for these reasons, imperative that the debtors arrive at some interim payment proposal for the creditors who have now been awaiting some results in these proceedings for nearly one and a half years without any results. The court recognizes that it continues to be the contention of the debtors that the creditors are greatly oversecured by the value of the two tracts of property. But rough calculations, which can be made on the basis of the debtors' own contentions, demonstrate that this equity is rapidly being diminished for the creditors by the passage of time and the particular plan which is now proposed by the debtors. According to the schedules accompanying the petition filed by the debtors, the secured property which is ma-terial to the plan is said to consist of two tracts of improved real estate—the "40 highway" property and the "Hedges" property. The former is said to have a value of $135,000 and to be encumbered by two liens of the Central Bank of Kansas City on which it is represented that respective balances due of $64,822.57 and $12,643.02 were owed as of the date of commencement of these title 11 proceedings. The latter property—the "Hedges" property—is said to be worth $115,000 and to have the following secured balances due as of the date of commencement of these title 11 proceedings: Blue Valley Federal Savings and Loan Association, $29,907.15; Security Pacific Finance Corporation, $9,160.55; and Central Bank of Kansas City, $12,643.02. These respective secured creditors are proposed to be treated as follows in the amended plan most recently submitted to the court:

*Central Bank of Kansas City:* With respect to the basic $60,000 principal amount secured by the "40 highway" property, the debtors propose to pay the principal balance of $60,000 plus interest at 15% per annum up to the date of the petition and "fluctuating interest" at 1½% over the prime rate for the post-petition period. (It must be observed that this provision violates section 506(b) of the Bankruptcy Code which provides that the interest awarded to an oversecured creditor shall be the interest which is "provided for under the agreement under which such claim arose" and the note to the Central Bank of Kansas City provides for interest at the rate of 19% per annum.) No adequate protection payments are to be provided for the preconfirmation delay. After confirmation, payments are to be made at $1,000 per month for a period of five years. "The remaining balance would be paid in full 5 years from the date of confirmation through either the sale of the property or re-financing of the debt."

With respect to the $12,643.02 indebtedness, it is proposed to be paid "upon the sale of the Hedges property."

"Debtors propose to list this property for sale with Caldwell Banker Realtors within 30 days of the confirmation of this plan and to sell the property within two years of the confirmation. During this time period, no payments are to be made on this note."

*Blue Valley Savings and Loan Association:* Debtors propose to pay the balance due as of the date of filing, $29,907.25, plus interest prepetition at the contract rate of 8% per annum and postpetition at prime plus 1½%. Before the sale of the Hedges property "within two years from the date of the confirmation," "no payments will be made to this creditor."

*Security Pacific Finance Corporation:* A debt having a $9,160.55 balance as of the date of filing will be paid as of the date of sale of the Hedges property, except that the 20% contractual rate of interest will be trimmed down to 1½% over prime postpetition, a provision, as observed above, which seems to violate section 506(b) of the Bankruptcy Code. *Barbara Philyaw,* holding a fourth deed of trust on the "Hedges" property, will be paid the balance of $8,942.11 plus interest 1½% over prime "upon sale of the property located at 3607 Hedges."

Although the provisions of the proposed plan seem to grant the debtors only a two-year moratorium on payments and only a two-year period of time in which to sell the Hedges property, out of which all of the secured creditors are to be paid, there is at least one other provision which makes this uncertain. In paragraph III of the proposed amended plan of reorganization, it is generally provided that "(d)ebtors reserve the *right to repay any indebtedness at any time.*" (Emphasis added.) So it is uncertain whether the two-year deadline on sale is to be considered to be a material provision of the plan or whether it is only an advisory guideline by which the debtors may or may not be guided.

But with as little as two years more in these proceedings, the total indebtedness owed to the Central Bank of Kansas City on the "40 highway" property will exceed $120,000 and the combined indebtednesses owed to the creditors secured on the "Hedges" property (other than the Central Bank of Kansas City) will exceed $50,000,[1] and all of these debts are proposed to be paid from the sale of the "Hedges" property, the value of which almost certainly does not exceed $115,000.[2] According to the provisions of the proposed amended plan, as they are understood by this court, the "40 highway" property is simply not to be available as security for the Central Bank of Kansas City.[3]

The court recognizes that, in the event of liquidation, the "40 highway" property will be available to the Central Bank of Kansas City as a valid and perfected lienholder.

---

1. The indebtedness of $60,000 to the Central Bank of Kansas City bears contractual interest of 19% per annum. The indebtedness to the same entity in the principal sum of $11,500 bears contractual interest at the rate of 15%. Based on the respective balances due as contained in the schedules, the former indebtedness should accrue at the rate of approximately $11,350 per annum—which would constitute a total of approximately $40,000 if a plan could not be consummated until 3½ years after the filing of the petition. The latter debt, over 3½ years, would accumulate interest of about $6600. Adding these figures to the level of debt due as of the date of bankruptcy gives a total of $124,063.59 which would be due 3½ years from that date. A real estate commission would take up the remainder of the currently represented value—$135,000—without any consideration of the costs and attorney's fees which would otherwise be owing to that creditor under the contract

between the parties and which are allowable to it under section 506(b) of the Bankruptcy Code. The debts on the other property (excluding Central Bank's claim of cross-collateralization with respect to the $60,000 indebtedness) will seemingly accumulate to a figure approaching $65,000. The debtors additionally claim a homestead exemption of $8,000 in this property and a prospective realtor's commission would be about $8,000. Attorney's fees and costs to three different sets of attorneys are apt to come close to consuming the remainder.

2. In fact, in a recent hearing, the debtors indicated that they would consider selling it for $100,000.

3. In accordance with the foregoing observations, this seems to make the proposed plan infeasible and doomed to failure from the outset.

But, if the plan is permitted to extend for two more years, the security interest of that creditor will be sufficiently infringed upon so as to require some immediate adequate protection which promises to cure the shortage which is predictable on the basis of the now-available facts.[4]

The same principles apply to the successive lienholders on the "Hedges" property. The debtors, in a recent hearing in this court, in proposing to sell the property for as low as $100,000, appear to have advanced this price as its current value. If the plan is to be permitted to proceed for two additional years from this date, the total balances due to the existing lienholders and the exemption claimed by the debtors will consume at least $85,000 of the value of this property.[5] Attorney's fees for the costs of liquidation and other expenses seem very likely to consume the remainder of the value.[6] Additionally, the Central Bank of Kansas City contends to be cross-collateralized as to the $60,000 indebtedness owed to it by a third mortgage in the "Hedges" property. Because the debtors have challenged the validity of that mortgage, this court has ignored it in determining the bases for adequate protection to the other creditors.

■ This court agrees that, when there is a considerable equity in mortgaged property and it can be sold within a short period of time, the debtors, without according any adequate protection, might be permitted that short period of time in which to sell the property. That is to say that there are imaginable cases in which the equity which exists so obviously protects the secured creditors so completely that any other adequate protection is not necessary. But, as time goes by and as a short period becomes a long one—as in the case at bar—the absence of adequate protection becomes crucial. The passage of a long period of time without sale of the property, for one thing, indicates that the great equity originally claimed may not in reality exist. And what equity does exist, as in this case, is being steadily eroded by the constant accumulation of interest. Further, over a three or four year period which will have evolved since the filing of this case, if the debtors' proposed plan goes into effect, it would be quite exceptional if no actual depreciation to the premises of the real property took place. If this court is to grant a stay pending appeal, it must assume that the proposed plan now before it will ultimately be confirmed and given effect. If it is confirmed and effected according to its terms and the values which are set out by the debtors, then the creditors will be fully compensated. If it does not, this court cannot say on the basis of the record which is currently before it that the creditors will be granted the "indubitable equivalence" of their secured interests. It is the historic function of the concept of "adequate protection" not only to "compensate for present value," but also to "insure the safety of the principal." *In re American Mariner Industries, supra,* at 433.

■ Further, according to the rule of *In re American Mariner Industries, Inc., supra,* "adequate protection" has a separate function from, and in addition to, that of offering complete compensation to the secured creditor in terms of all the principal and interest which will be due him as of the time that a plan is consummated.[7] That is to compensate "(t)he secured creditor's right to take possession of and sell collateral on the debtor's default," a right which "has substantial, measurable value" and which the secured creditor bargains for "when it agrees to extend credit to the debtor." Id. at 435. "To the extent that the debtor in bankruptcy can prevent the secured creditor from enforcing its rights against collateral while the debtor benefits from the creditor's money, the debtor and his unsecured creditors receive a windfall

---

**4.** Cf. note 1, *supra.*

**5.** See note 1, *supra.*

**6.** See note 1, *supra.*

**7.** An interest which may not be wholly protected as of this date with respect at least to the Central Bank of Kansas City. See note 1, *supra.*

at the expense of the secured creditor." *Id.*

This court could not say that if the plan had been confirmable at an earlier time, or if the property had been sold at the times which the court has hitherto indicated in its orders, that any adequate protection would be necessary. "(T)o avoid overcompensating the secured creditor, the timing of adequate protection should take account of the usual time and expense involved in repossession and sale of collateral." *Id.* Under this rubric, it may well be that the creditors Blue Valley Federal Savings and Loan Association and Security Pacific Finance Corporation are still adequately protected by value alone. They have as yet to demonstrate that the value of the property which constitutes their collateral is sufficiently low in value as to give rise to any reasonable apprehension that they will not be adequately protected by its value for a prospective period two years hence.[8] The secured creditor Philyaw has never requested relief from the stay or adequate protection. But it is almost certain, according to the foregoing principles, that the Central Bank of Kansas City cannot, at this juncture, be regarded as adequately protected by value alone. Therefore, as a prerequisite to the granting of a stay pending appeal, it appears that the debtors must comply with the rule of *In re American Mariner Industries, Inc., supra,* at 435, and propose "monthly interest payments at the market rate on the liquidation value of the collateral" or the equivalent in value thereof.

Accordingly, for the foregoing reasons, it is hereby

ORDERED that the debtors' motion to set aside the order of March 7, 1985, deny-

ing confirmation of their proposed plan of reorganization be, and it is hereby, denied. It is further

ORDERED that the debtors show cause in writing within 15 days of the date of entry of this order why their motion for stay pending appeal should not be denied by making written offers of adequate protection to the secured creditor in accordance with the foregoing principles.

---

**8.** In a prior motion for relief from the automatic stay, the Blue Valley Federal Savings and Loan Association stated that "at the time the loan was made by Rockhill Federal Savings and Loan Association, the June 1970 appraisal on the property was for a market value of $48,000" but that "Affiant has knowledge that the house is insured for $112,000." The former motion was denied without prejudice to its later reassertion because of the pendency of a motion to convert or dismiss these proceedings. If Blue

Valley Federal Savings and Loan Association can now show the current value of the Hedges property to be closer to $48,000 than $100,000, it may well be entitled to some form of adequate protection if these proceedings are to continue as chapter 11 proceedings. Similarly, in its former motion for relief from the automatic stay, the Security Pacific Finance Corporation admitted the value of the Hedges property to be $100,000.